# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMANDA L. GESSNER,<br>        Plaintiff,<br><br>        v.<br><br>LT. NIXON, et al.,<br>        Defendants. | C.A. No. 13-22 Erie<br><br>Magistrate Judge Baxter |

## OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter

## I.    INTRODUCTION

### A.    Relevant Procedural History

On January 22, 2013, Plaintiff Amanda L. Gessner, a prisoner formerly incarcerated at the State Correctional Institution at Cambridge Springs, Pennsylvania ("SCI Cambridge Springs"),[2] filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are SCI-Cambridge Springs corrections officers Lt. Nixon ("Nixon"); Sgt. Gage ("Gage"); C.O. Yost ("Yost"); C.O. Diehl ("Diehl"); and C.O. Jeffrey Vittorio ("Vittorio").

Plaintiff claims that Defendants violated her First, Seventh, Eighth and Fourteenth Amendment rights by using excessive force against her. In particular, Plaintiff alleges that, on November 17, 2012, Defendant Nixon ordered the other four Defendants to extract Plaintiff from her cell after she refused to leave the cell because she was trying to assist her cellmate with a

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 7, 49].

[2] Plaintiff is presently incarcerated at the State Correctional Institution at Muncy, Pennsylvania.

"medical issue" (ECF No. 3, Complaint, at Section IV.C). During the cell extraction, Plaintiff alleges that Defendants "put handcuffs on [her] wrist so tight it cut the blood circulation off to [her] hands," "broke open flesh to [her] skin," and "sprained [her] left wrist causing [her] to go on an emergency trip to Meadville Medical Center on November 18, 2012." (Id).

Defendants' have filed a motion for summary judgment asserting, *inter alia*, that the record evidence does not establish excessive use of force as a matter of law. [ECF No. 51].[3] Plaintiff has since filed a response to Defendants' motion. [ECF No. 59]. This matter is now ripe for consideration.

### B. Relevant Factual History[4]

On November 17, 2012, while Plaintiff was housed in the Restricted Housing Unit ("RHU") at SCI-Cambridge Springs, she appeared at her cell door holding a spork. (ECF No. 53, Defendants' concise statement of undisputed material facts, at ¶¶ 1-2). Defendant Vittorio went to Plaintiff's cell, opened the wicket, and ordered Plaintiff to give him the spork, which is contraband in the RHU; however, Plaintiff refused. (Id. at ¶¶ 3-4). After Plaintiff informed him that she had the spork for about a week, Defendant Vittorio again ordered Plaintiff it to hand him, but she again refused. (Id. at ¶¶ 5-6). After refusing a third order to hand over the spork, Plaintiff covered her cell camera with toilet paper. (Id. at ¶¶ 8-9).

---

[3] Defendants also assert that Plaintiff has failed to exhaust her administrative remedies; however, Defendants have failed to support this assertion with a declaration from an officer of the Pennsylvania Department of Corrections' Central Office verifying that Plaintiff has, indeed, failed to exhaust the administrative process as to her claims in this case. As a result, the Court will disregard this unsubstantiated assertion.

[4] The facts recited herein have been gleaned from Defendants' Concise Statement of Undisputed Material Facts [ECF No. 53], which is unopposed by Plaintiff, but only to the extent said facts are fully supported by the record.

The Shift Commander was then notified of the situation and Defendant Vittorio was ordered to keep the light on in Plaintiff's cell. (Id. at ¶ 10). Defendant Vittorio then gave Plaintiff a direct order to remove the toilet paper from her camera, which she refused, but she did slide the spork under the door. (Id. at ¶ 12). After this encounter, Plaintiff flooded her cell by stuffing items in her toilet and flushing it, causing it to overflow. (Id. at ¶ 13). Shortly thereafter, Defendant Vittorio called for a medical emergency for Plaintiff's cellmate, who was having a seizure. (Id. at ¶ 14). Defendants Nixon, Gage, Yost, and Diehl were among the officers who responded to the RHU. (Id. at ¶ 15). Defendant Nixon ordered Plaintiff to come to the wicket to be cuffed so that the officers could remove her from the cell in order to provide medical assistance to her cellmate; however, Plaintiff refused. (Id. at ¶¶ 16, 18). Defendant Diehl then knocked on the cell door and repeated the order to come to the wicket to be cuffed, but Plaintiff refused this order as well. (Id. at ¶ 21). Defendant Nixon then ordered the officers to enter the cell and extract Plaintiff so that medical assistance could be provided to her cellmate. (Id. at ¶ 24).

Defendant Yost entered the cell first and removed Plaintiff from between the wall and the bunk beds. (Id. at ¶ 26). Plaintiff began kicking at the officers and twisting her body in an attempt to avoid being handcuffed. (Id. at ¶ 28). Defendant Gage assisted Defendant Yost in bringing Plaintiff to the floor to gain control of her as she continued to ignore orders to comply. (Id. at ¶ 29). Defendant Yost then placed youth handcuffs and a tether on Plaintiff, as Plaintiff had slipped out of adult handcuffs in the past. (Id. at ¶¶ 31-32). A spit hood was placed on Plaintiff to protect the officers, as she kept turning her head in an apparent attempt to spit on them. (Id. at ¶¶ 37-38). Plaintiff continued to fight the officers by kicking and refusing to stand and walk. (Id.

at ¶ 40). As a result, Defendant Nixon ordered the officers to carry Plaintiff into the intake cell, which they proceeded to do while Plaintiff continued to struggle. (Id. at ¶¶ 42-44).

Defendant Nixon turned on the camera in the intake cell to document Plaintiff's behavior. (Id. at ¶ 45). As a precautionary measure, he then asked the medical staff to assess Plaintiff following the cell extraction, but Plaintiff refused to comply. (Id. at ¶¶ 51-52). While in the intake cell, Plaintiff repeatedly twisted her wrists in the cuffs, pulled away from the tether using the full weight of her body on her wrists, and tried to remove the spit shield by bending the top of her torso down to meet her outstretched cuffed hands. (Id. at ¶ 54). After Plaintiff's cellmate was removed and the officers performed a safety check, Plaintiff was moved back into her cell. (Id. at ¶¶ 48, 55).

After complaining of pain in her left wrist, Plaintiff was examined by a nurse, who initially observed that Plaintiff's left wrist was slightly reddened with no open flesh wound or swelling, and ultimately assessed a 3 cm. ecchymosis, or small bruise, on the left distal area of the left wrist. (Id. at ¶¶ 58-61). The nurse noted that Plaintiff was able to move her fingers and raise her left arm without difficulty, was able to turn her left wrist with slight difficulty, and was in no acute distress. (Id. at ¶¶ 62-63, 65, 67). The nurse took pictures of Plaintiff's left wrist, applied ice to the wrist, administered Motrin, and referred Plaintiff to the physician's assistant for further assessment. (Id. at ¶¶ 64, 66, 68). The next day, Plaintiff was taken to Meadville Medical Center for x-rays of her left wrist, which revealed no fracture. (Id. at ¶¶ 69-70, 73). Plaintiff was diagnosed with a contusion to her left wrist and was instructed to apply ice intermittently, four to six times daily, and to take Advil for pain (Id. at ¶¶ 71-72).

### C. Standards of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents

(i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

"Where the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact 'by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Player v. Motiva Enterprises, LLC, 240 Fed.Appx 513, 522 n4 (3d Cir. 2007) quoting UPMC Health Sys. v. Metro. Life Ins. Co., 391

F.3d 497, 502 (3d Cir. 2004). If the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## II. DISCUSSION

"In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the

extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), quoting Whitley, 475 U.S. at 321. The central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Moreover, "a showing of 'significant' or 'serious' injury is not necessary to make an Eighth Amendment claim." Brooks, 204 F.3d at 107, quoting Hudson, 503 U.S. at 8.

Here, the overwhelming evidence of record favors Defendants' assertion that the force applied to Plaintiff during her cell extraction was done in a good-faith attempt to maintain or restore discipline so that medical assistance could be provided to her cellmate, who was having a medical emergency. There is no evidence demonstrating that any force was applied sadistically or maliciously to cause Plaintiff harm. To the contrary, Defendants exercised remarkable restraint in the face of Plaintiff's repeated refusal to obey orders and her incessant barrage of insults and obscenities, which are clearly audible on the video footage of Plaintiff's stay in the intake cell. (ECF No. 55, Exhibit 2). This footage also evidences Plaintiff's violent struggle to free herself from her restraints, which more likely contributed to the bruising of her left wrist than anything the Defendants may have done during the cell extraction. Thus, no rational factfinder could conclude that Defendants used excessive force against Plaintiff in this case, and summary judgment will be entered in favor of Defendants accordingly.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA L. GESSNER, | ) | |
|     Plaintiff, | ) | C.A. No. 13-22 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| LT. NIXON, et al., | ) | |
|     Defendants. | ) | |

# **ORDER**

AND NOW, this 24th day of March, 2015,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment [ECF No. 51] is GRANTED and judgment is entered in favor of Defendants and against Plaintiff on all claims.

The Clerk is directed to mark this case closed.

 

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge